Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 The appellee, Francis Surget, a citizen of the State of Mississippi, instituted his suit in equity in the Circuit Court of the United States for the eastern district of Arkansas, against the appellant, the object of which suit was to annul as fraudulent and vóid a sale of lands belonging to the appellee, made by the sheriff of Jackson, in Arkansas, on the 18th of May, 1846. These lands, situated in the county and State above mentioned, are described in the pleadings according to the public surveys, amounting to more than fourteen thousand acres, and estimated in value at from forty or seventy thousand dollars, and wére sold by the sheriff in satisfaction of a claim for.,.$39, and conveyed to the appellant for the. sum of nine dollars thirteen and one-half cents.
 

 The Circuit Court having pronounced the sale and conveyance fraudulent and .void, and decreed a surrender and recon-veyance of the lands by the appellant to the- appellee, the former party has appealed from that decree to this- court.
 

 The facts of this cause, as collated from the pleadings, and as established by the proofs, are substantially as follows:
 

 The appellee, during the year 1835, separately, and in his individual right, entered and purchased of the Government of the United States, .at their land office at Batesville, in the State of Arkansas, a number of tracts or parcels of land, situated in the county of Jackson, in -the State aforesaid, all of which are known and designated on the plats of the public surveys, and are enumerated and set forth in the bill,. In the same year, (1835,) about the 10th of November,' the appellee, together with John Her, Stephen Duncan, and ’William B. Duncan, formed a partnership under the name and style of William B. Duncan & Co., and, in the name and behalf of that firm, entered and purchased of the United States, at their land office at • Batesville, various other tracts, lots, and parcels of land, lying in the same county and State, known and designated on the plats of the public surveys, and described and set out' in the bill. Sometime, in the year 1836, the partnership of Wil
 
 *305
 
 liam B. Duncan & Co. was, by mutual'consent, dissolved; and the property, real and personal, belonging to the firm, including the purchases and entries of land made by them, was by like consent divided, and tbe portion of each partner allotted to him, and by him held in severalty. The portions assigned and allotted, under this distribution, to Stephen Duncan and - William B. Duncan, as members of the partnership of William B. Duncan & Co., are particularly set out and described in the bill. Subsequently to the dissolution of the partnership of William B. Duncan & Co., and to the transfer to each partner of his respective rights and interest therein, Stephen Duncan and William B. Duncan, by deeds bearing date, the one on the 29th of December, 1836, and the other on the 23d of March, 1837, sold and conveyed to the appellee in fee simple, together with sundry other tracts and parcels of land, the lands, lots, and parcels, before mentioned as having been transferred and assigned to said Stephen and William B., as members of the firm of William B. Duncan & Co., all of which lots and par- ■ cels of land, so conveyed to the appellee by Stephen and William B. Duncan, as well as the portion thereof belonging to 'the appellee, as a :member of the firm of William B. Duncan &. Co., and the several lots and parcels of land originally and: separately entered and purchased by the appellee in his own-, right, were included in the levy and sale impeached by the; bill.
 

 In the year 1840, four years after the dissolution of the firm of William B. Duncan & Co., an action was instituted in the name of that firm, by William B. Duncan, in the Circuit Court ■ of Jackson county, in the State of Arkansas, against one: Noadiah Marsh, for a breach of covenant; and in that suit,, under the plea Nof a subsequent discharge in bankruptcy, the.1 court gaye judgment in favor of the defendant for costs of suit..
 

 The bill charges that this suit instituted against Marsh was-posterior in time to the, dissolution of the partnership, and was .commenced and prosecuted .without the authority or knowledge of thé other members of the recent partnership,, who all resided beyond the limits of the State of Arkansas; and 'further avers, that the first knowledge of the existence
 
 of
 
 'the suit on the part of the appellee was imparted to, him by a¿ comtaunication informing, him of the sale of his land; This;, allegation in the bill, with respect to the period at which the-suit against Marsh was instituted, and with respect also to the; person by whom instituted, and the ignorance .on the part of the appellee of the institution of that suit, is fully sustained by the deposition of William B. Duncan, and by the facts that the deeds from the other partners to the appellee, executed!
 
 *306
 
 after tlie dissolution, bear date in the years 1836 and 1837; the action at law against Marsh not having been commenced until 1840, September 5th.
 

 ' But should it be conceded that the partnership was. in full existence at the time of the institution of the suit against Marsh, and that the suit had been ordered or sanctioned by the firm, yet a'judgment for cost's against them, upon a ground which controverted neither the justice nor the legality of their claim, presents an anomaly in judicial proceedings, as irreconcilable with reason as it is believed to be without precedent.
 

 Upon this extraordinary judgment, the appellant, as the attorney for the defendant in the inferior court, assumed to himself the power to tax the costs adjudged to the defendant; to tax them not in the capacity of clerk, the- agent created by law for the performance of that service, nor in that of the legal deputy, or' subordinate of that officer, but, as it has been asserted, as a sort of
 
 amieus clerici,
 
 and with equal benevolence, or in order to remedy the ignorance and imbecility which, by way of justification of the appellant’s acts, it is attempted to be shown, characterized the ministers of the law in that unfortunate locality, assumed to himself the power and the right not only of selecting the final process, but of prescribing also the description ana the quantity of the property which he chose to have seized in satisfaction of that processof furnishing a list of the parcels and amount which he chose to have ¡thus seized; of ordering the sheriff to levy upon the whole of what he had so described; of preparing himself and furnishing to the officer such advertisements for the sale of the property ■levied upon as he approved; of requiring of the sheriff, under .peril of responsibility for refusal, towards the satisfaction of an execution for thirty-nine dollars and ten cents, peremptorily to make sale of more than fourteen thousand acres of land, estimated by the witnesses from forty to seventy thousand dollars; and finally, under a proceeding irregular in its origin, commenced by himself, and by him controlled and managed to its consummation, of becoming the purchaser of the property estimated as above, for the sum of nine dollars thirteen and one-half cents..
 

 Such is the history of a transaction which the appellant asks of ’ this court to sanction; and it seems pertinent here to inquire, under what system of civil polity, under what code of law or ethics, a transaction like that disclosed by the record, in this case can be excused, or even palliated? To the appellant must necessarily be imputed full knowledge of this transaction; he was the attorney for the defendant in the State court; he is shown to have been not only the 'adviser, but
 
 *307
 
 virtually the executor, of every step taken for the enforcement of the judgment of that court; and, as a lawyer, it is reasonable to presume that he must have comprehended the nature and effects of the measures adopted by him and at hjs instance. The bill impeaches these measures as. b'eing contrived by the appellant for purposes of fraud and oppression, as is betrayed—
 

 1. By the anomalous character of the judgment procured by the appellant, without notice or knowledge on the part of the appellee. . »
 

 2. By the fact, that the process sued out upon the judgment at law was not made out by the only officer legally authorized for that purpose, but was calculated, and drawn up; and determined, and written , out, by the appellant himself, and by his authority and direction delivered to the sheriff who was ordered by this same party on what particular property and to what amount to levy the execution.
 

 3. By the facts, that whatever notices or advertisements may have been given or prepared previously to the sale of the lands levied upon, were prepared not by the sheriff, but by the appellant; and that such as were prepared by him were not published by the sheriff in the mode prescribed by the law,
 

 • previously to the sale of lands under execution.
 

 4. By the wanfebh excessiveness of the levy insisted on by the appellant; this being an abuse of the process of the court, and. evidence of a fraudulent design, with a view to incite suspicion, and to deter purchasers by reason of that suspicion, and by offering larger portions of property than many persons would be willing or able to purchase.
 

 5. By the peremptory demand upon the sheriff, and in opposition to the remonstrances of this officer, ¿nd under threats, in the event of his refusal, to force a sale of this large amount . of property, under circumstances calculated to insure its ruinous sacrifice.
 

 6. The gross inadequacy of consideration given by the appellant for this large property, an effect produced by his own. fraudulent contrivances.
 

 The ground, upon which the. defendant below, the appellant here, has rested his case, may .in substance be reduced to the two following positions:
 

 1. The strength of his legal title acquired under the. execution and sale, and under the conveyance, from the sheriff, which execution, sale, and conveyance, he alleges were fair, ■apd not fraudulent; and
 

 ' 2. That sacrifices of land in the section of the State in which this sale occurred, similar to that complained of, were usual in sales under execution. •
 

 
 *308
 
 "With, respect to the effect of tbe judgment at law, and of the proceedings taken, for its enforcement, it is insisted, in the answer of the appellant, that this judgment having been ■rendered by a court of competent authority, and still remaining unreversed, neither the validity of that judgmentmor the proceedings in virtue thereof can now be questioned.
 

 It is true, that with respect to the regularity of that judgment, or of any legal errors in obtaining it, this court or the Circuit Court could not take cognizance, nor exercise any appellate power for its reversal; and in any collateral attempt -at law to impeach that judgment, it must be regarded as binding and operative. But with any fraudulent conduct of parties in obtaining a judgment, or in attempting to avail themselves 'thereof, this court can regularly, .as could the Circuit Court, take cognizance.' .Such á proceeding is within the legitimate province of courts of equity, and constitutes an extensive ground of their jurisdiction. The true and intrinsic character ■of proceedings, as well in courts of law as
 
 in pais,
 
 is alilra subject to the scrutiny of a court of equity, which will probe, and either sustain or annul them, according, to their real character, and as the ends of justice may require.
 

 'With reference, to the conduct of the appellant, in procuring and enforcing the judgment at law, that conduct has been, by ■the answer of the appellant and by the argument of his counsel, bought to be sustained, upon the ground that, as attorney for -Mafsh, the appellant had the power and the right to control •the judgment, and to carry it into effect. The power and right thus claimed for the appellant, like every other right and power, are bounded by rules of law and justice, and by consistency with the rights of others. So' far as it was necessary to maintain and enforce.the legitimate interests of Marsh, it’ was unquestionably within the competency of his attorney to interpose; but he could not, in pursuance of whatever he may •have fancied legitimate, or of whatever he may have deemed judicious or promotive of advantage to his client or himself, usurp the authority and functions of officers on whom the law ■ had devolved its just administration, and by that the preserva-ron of the rights of the'citizen. ...
 

 The offices of clerk and sheriff were never designed to be • mere names, npr to be engines and pretexts, to be used at the-■Will of any one. By what authority, then, could the appellant assume the functions of both clerk and sheriff; tax such costs as he deemed proper; order the seizure of property to an : amount entirely arbitrary, as his cupidity or indiscretion might incline him, and command peremptorily the sale of the whole subject thus illegally and rapaciously seized upon, without the
 
 *309
 
 slightest reference to the value- of the subject, in comparison with the demand to be satisfied, afid then to become himself the possessor of the subject thus sacrificed by his own irregular . and oppressive conduct, for a pretended consideration so trivial that it may be considered as nominal merely?
 

 In justification or in excuse for this assumption,, it has been alleged and relied on by the appellant,' (though the position is entirety unsustained by proof,) that it was rendered necessary by the ignorance of those officers to whom the duties of clerk and sheriff had been assigned by law; and had become a common practice in the particular part of the country where this proceeding occurred. If. the position thus taken be true in fact, it rather aggravates than extenuates the wrong complained of, as it shows that, by the ignorance of the corruption of those officers of the law, the rights of the complainant had been surrendered to the mercy of one having a direct interest to invade those rights. It evinces, moreover, if true, a practice, in a profession heretofore deemed enlightened and honorable, highly calculated to bring that profession into merited disrepute.
 

 IJpon the question of the illegality in the sale for want of notice by advertisement, it has been insisted by the appellant that the bill contains no charge with respect to such illegality, and that therefore no proofs as to that point can be admitted.
 

 It is undoubtedly the rule in' equity, as well as at law, that the proofs must correspond with the allegations, and that evidence irrelevant or inapplicable to the latter will be regarded as immaterial. The bill in this case is less searchingly and minutely framed than it might have been on this particular point, yet it is considered as being sufficiently comprehensive, and as sufficiently specific at. the same time, to embrace this point, and to justify proofs in relation thereto.
 

 It alleges as illegal and unwarrantable the taxing of the costs, the writing of the execution, the writing of the list and description of the lands required to be levied on, and the notices of sale by the appellant;- the manner of publishing or putting those notices and the proceedings under them at the sale — all as being unwarranted by law, and as having been concocted and carried out in fraud; all these allegations it was competent to the appellee to prove. The answer of the. appellant — after, a genéral denial of fraud and unfairness, and after admitting the taxing of the costs, the writing of the execution, the description of the land to be levied upon, the directions of the sheriff, and the preparation of the • advertisements, all by himself — next insists upon the regularity and propriety of all these acts. He then proceeds to aver the performance of every
 
 *310
 
 prerequisite of the law with respect tó such sales. After enumerating these prerequisites in detail, he endeavors to establish them by evidence. He says that the sheriff advertised the lands for twenty days in three of the most public places in each township of the county, in conformity with the statute; and he introduces the evidence of the. sheriff and of other witnesses to maintain these averments.
 

 Butin contravention of these.statements are, first, the admission of the appellant that
 
 he
 
 himselfand not the sheriff, prepared the notices of sale; and, secondly, the evidence of the sheriff introduced and relied on by the appellant, so far from showing a compliance with the requisites of the law, establishes. the fact that these were violated and disregarded; for the sheriff declares that'he took the list and the description of the property, and the notices prepared by the appellant; and this officer admits that he did not put up advertisements, either in number or locality, as required by law, nor could he swear to such' a proceeding by him. He says it was his practice to set up advertisements in places in which it was convenient for him to do so, and to hand over other notices to persons in whom he had confidence.
 

 Here, then, is proof, supplied by the appellant, that the law had not been complied with. The acts of an official deputy are evidence of the acts of his principal, and are binding on all who fall within the legal scope of those acts. But it is not perceived how the rights of suitors can be at all dependent upon the unofficial and individual confidence of one officer, even when that confidence may not have been misplaced. In this case, there is no proof that it hacheen fulfilled; for no person shows that the notices had been in fact put up and published according to the statute. The mere
 
 belief,
 
 either of the sheriff ór any other person, can have' no operation where. the íaw calls for full legal proof.
 

 The objections here stated cannot be deemed narrow or technical with reference to a case like the .present — a case presenting no claim to faVor either in law or in equity; a ease in which the respondent was and is bound to pursue the hair line of legal and formal strictness, and from which,, if he deviate, in never so small a degree, he is doomed to fa-J. The conduct of the defendant, in all that he has done himself, and in all that. he has exacted of others, is essentially important jn this ease as evidence of the
 
 quo animo
 
 with which this transaction was, begun, prosecuted, and consummated. Another pregnant proof of the design of the- appellant to grasp and to retain what no principle of liberality or equity could warrant, is the fact, clearly established, of his refusal after the sale to accept from
 
 *311
 
 the appellee, for the redemption of his lands so glaringly sacrificed, a sum of money considerably exceeding in amount the judgment for costs, with all the expenses incidental to the carrying that judgment into effect., The appellant, by his irregular and unconscientióus contrivances, achieved what he conceived to be an immense speculation; and ]tie determined to avail himself of it,'regardless of its injustice and ruinous consequences to the appellee. ' .
 

 To meet the objection made to the.sale in this case, founded On the inadequacy of the’price, at which the land was sold, it is. insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexet,! to it' by the courts; namely, unless such inadequacy be soi gross as to shock the conscience; for this qualification implies necessarily the affirmation, that if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of. fraud-. Again; in answer to tbé same objection, it is insisted, that whatever presumption arising from inadequacy of consideration may be permitted' with respect to transactions strictly limited to v.end-s or and vendee, no unfavorable inference from that cause is permissible With respect to sales made -under judicial process. Certainly the facts that sales -,are made by the officers or ministers of the law, and under its authority, may properly weaken the usual presumption .arising from gross inadequacy; but to declare that such inadequacy, connected with other facts and circumstances evincing fraud or unfairness, could never be regarded as affecting sales under process, would be as rational as the assertion that process of law could never be abused; and that the ministers of the law must necessarily be intelligent and upright, and incapable of being ever willingly or unwittingly made the instruments of fraud or oppression. ' But the transaction now under review can with no show of propriety be tested by the single fact of -inadequacy of consideration, however gross and extraordinary that inadequacy has been, "We perceivé in this transaction other ingredients that have been mingled therewith by the appellant, that give to the objection of inadequacy ah effect that, standing isolated -and alone, could not be ascribed- to or deduced from it.
 

 Thus, when we;ndvert to the-irregular and extraordinary character of the judgment procured through the agency of the appellant — to his eagerness, that could not await the action of the officer of-the court — his assumption of the functions of the clerk, in. taxing the costs, and in writing out the execution-r-his preparation and delivery to the sheriff of a description and list of the lands of the appellee, amounting to more than fourteen
 
 *312
 
 thousand acres — bis requisition of a seizure of the whole of those lands in satisfaction of the sum of thirty-nine dollars — ids inflexible demand upon the sheriff, under threats'of prosecution, to expose to sale the entire levy — his purchase of all these lands for the sum of nine dollars and thirteen and a half cents— and his refusal after the sale and purchase to accept, in redemption of these lands so sacrificed, a sum of money tendered to' him much more- than equal to the costs, with all the expenses incident to the judgment: when all these acts on the part of the appellant are adverted to, they impel irresistiblyto the conclusion, that the gross inadequacy of consideration in the sale • and purchase of these lands was the premeditated result wliich the proceedings by'the appellant were put in practice .to insure.They betray that
 
 malus dolus
 
 in which the design of the appellant was conceived, which appears to-have presided over and regulated the progress- of the ■ design from its birth to its consummation; to which design the appellant has tenaciously . clung, in the seeming expectation that it was beyond the cor- ' rective powers of law or justice.
 

 Upon the whole case, we are constrained to view the entire transaction impeached by the appellee as one that cannot be sustained without the subversion of the principles and rules either .of legal or moral justice.-
 
 We
 
 accordingly,approve the' decision of the Circuit Court in so regarding it, and'order that decree to be affirmed. -