In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1039

N.R. DOE, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ST. FRANCIS SCHOOL DISTRICT,

*Defendant-Appellee*,

KELLY SWEET,

*Defendant*,

and

COMMUNITY INSURANCE CORPORATION,

*Intervening Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-C-0545—**Charles N. Clevert, Jr.**, *Chief Judge*.

ARGUED MAY 30, 2012—DECIDED SEPTEMBER 10, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This suit, by a 14-year-old eighth grader and his parents (whom we can ignore, and so we refer to the boy as the plaintiff), seeks to impose liability on the school district for sexual abuse by a 26-year-old female teacher, Kelly Sweet, no longer employed by the school. The plaintiff is of course not named "N.R. Doe" but is being permitted to litigate pseudonymously.

The suit alleges that the failure of the public school district (named "St. Francis" because it is in a town of that name—it is not a parochial school) to prevent the abuse violated the plaintiff's rights under Title IX of the federal Education Amendments Act of 1972, 20 U.S.C. § 1681, and also constituted negligent infliction of emotional distress under Wisconsin tort law. Psychological harm is alleged and damages sought. The district court granted summary judgment in favor of the school district and certified the dismissal for immediate appellate review. Fed. R. Civ. P. 54(b). The suit remains pending in the district court against Sweet. The school's insurer intervened as a defendant-appellee but has not filed a brief and can be ignored.

Title IX prohibits sex discrimination in educational programs that receive federal financial assistance. 20 U.S.C. § 1681(a). Although the statute doesn't mention a private right of action, the Supreme Court has held that such a right is implied, *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979), and entitles the successful plaintiff to damages. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992). But as in cases under the Civil Rights Act of 1871, 42 U.S.C. § 1983, a school district sued in a private

suit under Title IX cannot be held liable on the ground of respondeat superior for an employee's violation of the statute. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 285 (1998). The plaintiff must prove that "an official of the school district who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id*. at 277; see also *id*. at 290. In *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004), we said with reference to the first of these requirements (and the only one we need discuss)—"actual notice"—that the plaintiff must prove "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct." See also *Hansen v. Board of Trustees*, 551 F.3d 599, 605 (7th Cir. 2008); *J.F.K. v. Troup County School District*, 678 F.3d 1254, 1260 (11th Cir. 2012).

These are not perspicuous formulations. "Actual notice" and "deliberate indifference" are redundant, and "actual notice" and "actual knowledge" are not necessarily synonyms. What's clear is that a school district's liability must be personal rather than vicarious, but we need a clearer statement of the standard for holding officials liable than the statements we just quoted. The standard has gotten a lot of attention in civil rights cases under 42 U.S.C. § 1983, which generally apply, or at least articulate, the criminal standard of recklessness—conscious disregard of a substantial and unjustifiable risk of causing harm. See, e.g., *United States v. Boyd*, 475 F.3d 875, 876 (7th Cir. 2007); *West v. Waymire*, 114 F.3d 646, 649-52 (7th Cir. 1997); American Law Institute, *Model Penal Code* § 2.02(2)(c)

(1962). But as we pointed out in the *West* case, many section 1983 cases not involving cruel and unusual punishments apply instead the tort standard of recklessness—"conscious disregard of known or *obvious* dangers." 114 F.3d at 651 (emphasis in original); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 34, pp. 212-13 (5th ed. 1984). See, e.g., *Board of County Commissioners v. Brown*, 520 U.S. 397, 410-15 (1997); *Jones v. Town of East Haven*, No. 10-4731-cv(L), 2012 WL 3104523, at *7 (2d Cir. Aug. 1, 2012); *Sanford v. Stiles*, 456 F.3d 298, 309-10 and n. 13 (3d Cir. 2006) (per curiam) (noting the conflict in standards). And we have found a Title IX case that uses a similar formula: *Escue v. Northern Oklahoma College*, 450 F.3d 1146, 1153-54 (10th Cir. 2006).

But there is less to the conflict in standards than meets the eye, because in practice there is little difference between known and obvious, the former being a natural inference from the latter. Keeton et al., *supra*, § 34, pp. 213-14. Choosing between them in this case would not affect the outcome.

The school district concedes misconduct by the teacher. After an exchange of text messages in which she told the boy that she wanted him to be her boyfriend, she invited him to her apartment. He accepted the invitation and when he arrived they spent 15 to 20 minutes kissing and petting. (She concedes the kissing but denies the petting.) Sexually suggestive text messages followed, though no further physical contact. Although Sweet and the boy had agreed to keep their relationship secret, one or more of the messages were discovered by the boy's

mother. She then transferred him to a private school. Sweet was fired, prosecuted, and pleaded guilty to fourth-degree sexual assault in violation of Wis. Stat. § 940.225(3m).

Sweet was disliked by the other eighth-grade teachers. They thought she failed to maintain discipline. One of them complained to the school's principal that Sweet was text messaging during the school day. She denied it. The principal told her not to send text messages on the job. Complaints about Sweet's classroom management and text messaging reached the school district's superintendent, Carol Topinka, who told the principal to investigate the allegations. Sweet denied the allegations and the principal was satisfied. But Topinka was not and interviewed several of the other eighth-grade teachers. They complained that Sweet had "breached the line" and "blurred the line" by treating students as friends—including our plaintiff. One of the teachers, Elizabeth Gridley, said that Sweet and the plaintiff had something "like an eighth grade girlfriend/boyfriend relationship," "like a crush." Topinka asked Gridley whether she thought there was anything illegal going on and she said no. And the teachers acknowledged to Topinka that they had no evidence to confirm their suspicions. Topinka interviewed Sweet and concluded that her denials of any impropriety were sincere. There matters stood until the discovery of the relationship by the plaintiff's mother and the report of it to the school, whereupon prompt measures to terminate Sweet were undertaken.

Topinka must have considered the possibility that Sweet and the plaintiff were romantically involved when she asked Gridley whether she suspected that Sweet was doing anything "illegal." Gridley said she didn't suspect that, and Sweet denied any improprieties, and it is not clear what further investigation Topinka should have conducted at that point. No matter. Neither Topinka nor the principal knew about the relationship (still in the text-messaging stage) before it culminated in the apartment visit, and indeed till after the plaintiff's mother discovered the text messages. Nor was the relationship obvious.

What the principal and the superintendent knew was that Sweet's colleagues, in particular Gridley, suspected an improper relationship between Sweet and the plaintiff. But to know that someone suspects something is not to know the something and does not mean the something is obvious. The plaintiff unwittingly concedes this in his reply brief when he states that "Gridley's and the other Teachers' reports of an inappropriate romantic relationship between Sweet and NR Doe, including Sweet's reciprocation of NR Doe's crush, and of their concern for NR Doe, was sufficient to put the School District *on notice* of misconduct suggesting sexual harassment." The term we've italicized denotes merely knowledge that would cause a reasonable person to investigate further. It is what in securities law is called "inquiry notice." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1797-98 (2010); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 929-30 (7th Cir. 2011); *City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169, 173-74 (2d

Cir. 2011). It falls well short of recklessness in either the civil-law or the criminal-law sense.

Elsewhere the brief states that "the information provided by the Teachers showed a known or obvious risk of sexual misconduct by Sweet." Known to whom? Not to the principal or the superintendent. We add unnecessarily that neither is there any proof of a deliberate failure by the school district to take prompt remedial action. Not only because Topinka did act promptly after learning of the improper nature of the relationship between Sweet and the plaintiff, but also because it is unclear what more Topinka should have done after hearing Sweet's denials. The plaintiff suggests that she should have questioned the plaintiff and his parents and other students, but that would have caused considerable distress to the plaintiff's parents (who had encouraged his friendly relationship with Sweet without having any idea that it had a romantic or sexual dimension) and would have distracted the other students from their studies.

Judges must be sensitive to the effects on education of heavy-handed judicial intrusion into school disciplinary issues, or heavy-handed administrative intrusion required by judges interpreting Title IX and other statutes that, along with free-wheeling interpretations of the speech and religion clauses of the First Amendment, have made education one of the most heavily regulated American industries. See, e.g., Barbara A. Lee, "Fifty Years of Higher Education Law: Turning the Kaleidoscope," 36 *J. College & University L.* 649 (2010). Let us

not forget that one component of academic freedom is the right of schools to a degree of autonomy in the management of their internal affairs. See *Brandt v. Board of Education*, 480 F.3d 460, 467 (7th Cir. 2007); *Crowley v. McKinney*, 400 F.3d 965, 969-70 (7th Cir. 2005); Robert M. O'Neil, "Judicial Deference to Academic Decisions: An Outmoded Concept?" 36 *J. College & University L.* 729 (2010).

What we have said so far also disposes of the supplemental state law claim for negligent infliction of emotional distress. Wisconsin law provides immunity for exercises of discretion by public officials unless an official disregards a known danger. Wis. Stat. § 893.80(4); *Pries v. McMillon*, 784 N.W.2d 648, 655-56 (Wis. 2010); *Lodl v. Progressive Northern Ins. Co.*, 646 N.W.2d 314, 320-24 (Wis. 2002). But again the danger must be known to the official, not known to someone else (in this case, merely suspected by someone else) and communicated to the official without proof. *Lodl v. Progressive Northern Ins. Co.*, *supra*, 646 N.W.2d at 320-24; *C.L. v. Olson*, 422 N.W.2d 614, 622-23 (Wis. 1988); *Heuser ex rel. Jacobs v. Community Ins. Corp.*, 774 N.W.2d 653, 659-60 (Wis. App. 2009).

AFFIRMED.