# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2425

RONALD SLADE, individually and
as administrator of the estate of
KAMONIE SLADE; and CHARAMA SLADE,

*Plaintiffs-Appellants,*

*v.*

BOARD OF SCHOOL DIRECTORS OF THE
CITY OF MILWAUKEE, *et al.*,

*Defendants,*

and

MARIBETH GOSZ and LINDA ESTES,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cv-222-RTR—**Rudolph T. Randa**, *Judge*.

ARGUED OCTOBER 24, 2012—DECIDED DECEMBER 27, 2012

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The plaintiffs—the estate of a decedent, Kamonie Slade, and his parents—brought suit against administrators of the Wisconsin public school that the boy was attending at the time of his death from drowning at a class outing. The suit is based on 42 U.S.C. § 1983 and claims that the defendants deprived Kamonie of his life in violation of the due process clause of the Fourteenth Amendment. The district judge granted summary judgment for the defendants and having done so relinquished jurisdiction over the plaintiffs' supplemental state law tort claims and dismissed the suit. The appeal challenges only the dismissal of the federal claim; and the only defendants against whom that claim is made, and hence the only appellees, are Estes (formerly named Roundtree) and Gosz, the principal and an assistant principal of the school. The plaintiffs seem to have a meritorious state law tort claim against at least Gosz. But with irrelevant exceptions, Wisconsin law caps the tort liability of a public employee at $50,000 per victim. Wis. Stat. § 893.80(3); *Linville v. City of Janesville*, 516 N.W.2d 427, 433 (Wis. 1994). That would make the plaintiffs' maximum recovery on their state law claims for wrongful death and loss of consortium $150,000, which is meager in the circumstances but of course beyond our control.

The facts are not in serious dispute. Gosz planned and Estes approved a field trip to Mauthe Lake for graduating seventh graders on the last day of the school year. The lake, a 70-acre lake with a maximum depth of 23 feet, is located in the Kettle Moraine State Forest in southeastern

Wisconsin, and has a public beach. The seventh graders were invited, not required, to go on the trip. Notices were sent to the students' parents asking permission for their kids "to play in the water" (if they went on the outing) and, if permission was granted, asking the parents to equip their kids with bathing suits and other swimming gear. Rules of the Milwaukee Public School District, which includes the school that Kamonie attended, forbid recreational swimming on field trips unless a lifeguard is present. Gosz, who conducted the children to the lake, was aware that there was no lifeguard, aware of the school district's rules about swimming, and aware that there were places in the designated swimming area where the water would be over the children's heads. And Estes may have directed Gosz to keep the children out of the water, which Gosz did not do.

Ninety-two children participated in the outing. In the morning about half of them entered the lake, all from the public beach. After lunch a teacher named Pitta saw six children, including Kamonie, who was 12 years old, at the water's edge. Gosz asked Pitta to supervise them. Pitta didn't know whether any of the children could swim, and although *he* can swim he is not a certified lifeguard and was not wearing a bathing suit. He told the children not to go so far into the lake that the water would be above their chests. Kamonie, with other students, walked into the lake and kept walking until the water reached his chest, and he was then drawn, either by a current or by the downward slope of the lake's bottom, to a location at which the water was over his head. He was a poor swimmer, was unable to keep afloat, and drowned.

Pitta dove into the water when he heard children yelling for help, and a child approached Gosz and told her that someone was drowning. After telling another adult to call 911, Gosz followed Pitta into the water. All to no avail. Kamonie was about 100 feet from the shore when he drowned, but still inside the lake's designated swimming area. He was a shade under 6 feet tall; the lake was approximately 7.6 feet deep where he drowned. For purposes of the appeal we assume that had a lifeguard been present Kamonie would have been saved, although obviously this is uncertain.

A state does not deprive a person of his life in violation of the Fourteenth Amendment merely by failing to prevent his dying, but does violate the amendment if the death was caused by the reckless act by an employee of the state acting within the scope of his or her employment. E.g., *Paine v. Cason*, 678 F.3d 500, 509-11 (7th Cir. 2012); *King ex rel. King v. East St. Louis School District 189*, 496 F.3d 812, 817-18 (7th Cir. 2007); *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001); cf. *Sanford v. Stiles*, 456 F.3d 298, 309-10 (3d Cir. 2006) (per curiam). The cases generally understand "recklessness" to mean knowledge of a serious risk to another person, coupled with failure to avert the risk though it could easily have been averted. This is the criminal meaning of recklessness, whereas in civil cases at common law it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant. See *Doe v. St. Francis School District*, 694 F.3d 869, 872 (7th Cir. 2012).

A complication is that often in cases such as this the court in describing the liability standard will substitute

for recklessness the term "deliberate indifference." The word "deliberate" makes the standard sound like the criminal standard of recklessness. But actually it's an unsettled question whether knowledge of the risk is required or it is enough that the risk is obvious, *West By & Through Norris v. Waymire*, 114 F.3d 646, 650-52 (7th Cir. 1997); *Sanford v. Stiles*, *supra*, 456 F.3d at 310 and n. 15, other than in Eighth Amendment ("cruel and unusual punishments") cases, where the Supreme Court has held that knowledge of the risk is required for liability. *Farmer v. Brennan*, 511 U.S. 525, 536-42 (1994). Although as we pointed out in *Doe* "in practice there is little difference between known and obvious, the former being a natural inference from the latter," 694 F.3d at 871 (citation omitted), there is at least a shade of difference; the risk might be obvious to a normal person but the defendant might be especially obtuse. But in this case as in *Doe* the difference between what is known and what is obvious is unimportant.

The defendants argue that they committed no "affirmative act" causally related to Kamonie's drowning. The term "affirmative act" appears in some of the cases but is unhelpful. All acts are affirmative, including standing still when one could save a person by warning him of some impending danger. The defendants acted when they decided to have an outing for the students at which there would be swimming, when they asked parental authorization, when they allowed the kids to go into the water even though no lifeguard was present. Consider the following case. Police publish the name of a person who provided them with a confidential tip, and

as a result of the publication he's killed by the criminals inculpated by the tip. It is no defense to a charge of a violation of due process that the death was inflicted by private persons. *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998). The police had placed him in a position of great danger and the danger was a significant causal factor in his demise, although not the only factor, just as the acts of the defendants in this case were not the only causes of Kamonie's death: his lack of good swimming skills and the depth and the lake's current or the pitch of the lake floor were causes as well.

Cases like *Monfils* are "trap" cases; the police place a person in a situation in which he is endangered by other private persons; the police in effect are their accomplices—unwitting, but if reckless culpable. In other cases in which state employees are held liable under the due process clause for injuries inflicted by private persons—cases often referred to (not very illuminatingly) as "special relationship" cases—the state has by exercising custody over a person deprived him of the ability to protect himself and has thus endangered him. *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 848-50 (7th Cir. 1990); *Doe ex rel. Johnson v. South Carolina Department of Social Services*, 597 F.3d 163, 172-75 (4th Cir. 2010).

With such cases contrast one in which residents of a neighborhood that is a battlefield of rival gangs plead with the police to make greater efforts to pacify the neighborhood, but their pleas fall on deaf ears—and sure

enough a resident is caught in a crossfire and dies. His estate may have a claim against the police under state law, but not under the Fourteenth Amendment. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989); *Sandage v. Board of Commissioners*, 548 F.3d 595, 596 (7th Cir. 2008); *Stevens v. Umsted*, 131 F.3d 697, 705-06 (7th Cir. 1997); *Jones v. Reynolds*, 438 F.3d 685, 691-92, 694 (6th Cir. 2006). This is not because the police failed to act; they acted, but their act was the deployment of their resources elsewhere. That act was a significant causal factor in the death, but there is no constitutional violation. This is not because of absence of causality but because recognition of a constitutional right to adequate police protection and other public assistance would place federal judges in control of much of the apparatus of government. For much of what government does is protect and otherwise assist members of the public, and when it fails in these duties and harm results it is often easy enough to make a colorable claim of negligence or worse. Were liability under federal law allowed to be imposed in such cases, federal judges would become deeply involved in the allocation of public funds and services, a task for which guidance can't be found in the Constitution. The judges would be at large, usurping traditional legislative and executive functions. *Collins v. City of Harker Heights*, 503 U.S. 115, 128-29 (1992). That is why we have said that "'the Constitution is a charter of negative liberties,'" *Sandage v. Board of Commissioners*, *supra*, 548 F.3d at 596, quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982), not positive liberties, such as the right to police protection.

The Milwaukee Public School District could have allocated greater resources to assuring the safety of children on field trips. It could have assigned three or four full-time staffers to the planning of trips or have hired a specialist to audit every proposed trip to ensure full compliance with all federal, state, local, and district laws and regulations; such measures might well have saved Kamonie's life. But like all school districts the Milwaukee district had to decide how many resources to allocate to safety on field trips, given budgetary limits and competing claims on its resources. The federal courts are not in a position to second-guess such judgments, except perhaps in the most extreme circumstances. But the complaint in this case is not about the amount of resources allocated to safety in field trips, but about the specific conduct of the staff involved in a specific field trip, conduct that could be thought to fall within some combination of the "trap" and "custody" grounds of liability.

The defendants, it is true, did not order Kamonie into the water, or for that matter order him to go on the outing at all. They planned and led the field trip that exposed him to the danger, but the same might be said of the government's efforts to recruit soldiers. The fact that the government encourages a person to expose himself to danger, for example by asking him to participate in a drug sting as a confidential informant or accept a risky government job, does not create liability under the due process clause just because the danger materializes. *Dykema v. Skoumal*, 261 F.3d 701, 705-07 (7th Cir. 2001); *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 80-81 (1st Cir. 2005); see also *Collins v. City of Harker Heights*, *supra*, 503 U.S. at 125-29. This is merely recognition that the

defense of assumption of risk is applicable to constitutional torts and not just to common law ones.

The defendants seek exculpation on that ground (among others), but if the plaintiffs' case were otherwise sound, the defense of assumption of risk could not prevail as a matter of law; instead it would present a triable issue. Kamonie was only a 12 year old; he lacked mature judgment; and he was subject to the usual peer pressures that beset children. Was it realistic to expect him to hang back when his classmates were splashing around in the water? The defendants' argument that Kamonie was the author of his own death is heartless; it may also be obtuse.

The plaintiffs argue that the defendants enticed Kamonie into danger. But they overshoot the mark, just as the defendants undershoot it. Enticement is deliberate; to say that Gosz and Estes enticed Kamonie into a dangerous situation is to accuse them of deliberate endangerment, and there is no evidence of that. Gosz was negligent and her negligence enhanced the danger inherent in swimming in a lake: she disobeyed the rule requiring the presence of a lifeguard even though she knew that portions of the designated swimming area were so deep that the water was over the head of some of the kids. It is well known to most adults that lakes and other natural bodies of water, even inland water, are dangerous because of currents and uneven depth, and especially to children. Estes may have been negligent too in failing to require a proper permission slip or to make sure that there would be a lifeguard on duty.

The defendants' negligence enhanced the risk to Kamonie, but negligence is not enticement, or deliberate indifference, or blindness to obvious dangers. Negligence is therefore not a basis for liability in a due process case, as the case law makes clear. *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327 (1986); *Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002). Nor is gross negligence. See, e.g., *id.*; *Archie v. City of Racine*, 847 F.2d 1211, 1219-20 (7th Cir. 1988) (en banc); *Kennedy v. City of Ridgefield*, *supra*, 439 F.3d at 1064-65; *Hart v. City of Little Rock*, 432 F.3d 801, 805-06 (8th Cir. 2005); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066-67 (6th Cir. 1994); but cf. *Hunt v. Sycamore Community School District Board of Education*, 542 F.3d 529, 535 (6th Cir. 2008); *Phillips v. County of Allegheny*, 515 F.3d 224, 241 (3d Cir. 2008). Gross negligence is not recklessness (or "deliberate indifference") in either the civil or the criminal sense.

Consider tort liability to a business invitee. A homeowner through negligence, perhaps even gross negligence, fails to repair a rotten step in his doorway. A repairman—a business invitee—steps on the rotten step, which gives way, spilling and injuring him. The homeowner is liable at common law for negligence. But if it is a public school rather than a private home, can the repairman sue school officials under 42 U.S.C. § 1983, on the ground that he was enticed into a place of danger? The answer is no. "Entice" does not mean to be careless in allowing someone onto your property, or onto property (such as the lake in this case) that you control

access to (for the defendants had to give the kids they were shepherding permission to enter the lake). Had Kamonie told Gosz that although he was a poor swimmer he was going to try to swim across the lake, and she had replied "proceed at your own risk," her conduct would have been reckless endangerment; for she had brought him to a place of danger and he was in her charge yet she would be virtually daring him to risk his life. That is not this case. Gosz didn't know that Kamonie was a poor swimmer, or that if he was he would nevertheless wade too far into the lake, or that he or any other student was in significant danger. And Gosz and Estes did take some steps to try to ensure the children's safety. They sent permission slips home; the slips referred to "playing in the water"; there were teacher-chaperones accompanying Gosz—she was not the only adult at the scene and she told one of them, Pitta, to watch Kamonie and his playmates while they played in the water. And Pitta did so, though he lacked the skills he would have needed to have a good chance of saving Kamonie from drowning. Gosz was as we said negligent; she was not reckless. And likewise Estes.

Some cases say or assume that due process is violated in a case in which the state endangers a person only if the state's action "shocks the conscience." *County of Sacramento v. Lewis, supra*, 523 U.S. at 846; *Jackson v. Indian Prairie School District 204*, 653 F.3d 647, 654-55 (7th Cir. 2011); *Okin v. Village of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 430-32 (2d Cir. 2009); see also *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999). The expression has been part of the legal lexicon at

least since 1804, see *Coles v. Trecothick*, (1804) 9 Ves. 234, 246 (Ch.), and was picked up by the Supreme Court a half century later, in *Byers v. Surget*, 60 U.S. 303, 311 (1856). But its first modern appearance, and its most influential, was in Justice Frankfurter's opinion for the Supreme Court in *Rochin v. California*, 342 U.S. 165, 172, 173 (1952), where he used the phrase to classify a police search for illegal drugs by means of a stomach pump as a violation of due process. It's not a very illuminating expression, and we don't know what it adds to recklessness. Reckless indifference to a child's safety would doubtless shock the conscience, but *County of Sacramento v. Lewis*, *supra*, 523 U.S. at 849, says that negligence doesn't.

References to "shocks the conscience" illustrate the tendency of some courts to "complexify" analysis in this class of cases needlessly, as it seems to us. We have already indicated our unhappiness with the use of "affirmative act" and "shocks the conscience" as touchstones of liability. Neither are we happy with the suggestion in *Phillips v. County of Allegheny*, *supra*, 515 F.3d at 241—a suggestion in tension with *County of Sacramento v. Lewis*—that due process can be violated by "gross negligence or arbitrariness that indeed shocks the conscience." (What for example does "arbitrariness" mean in this context?) And we get little out of the test suggested for cases of this sort in *Currier v. Doran*, *supra*, 242 F.3d at 918 (and earlier Tenth Circuit cases on which it relies): "To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the

danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking."

Shouldn't it be enough to say that it violates the due process clause for a government employee acting within the scope of his employment to commit a reckless act that by gratuitously endangering a person results in an injury to that person? Are there not virtues in simplicity, even in law?

With our simple formula (which incidentally dispenses with the jargony term "deliberate indifference"), all that remains in doubt is the choice between the civil and criminal standards of recklessness—between the known versus the merely obvious risk—but that difference as we have said has little practical significance in a litigation and none in this litigation.

AFFIRMED.