In the

# United States Court of Appeals
### For the Seventh Circuit

————————

No. 06-3394

GERALDINE KING,

*Plaintiff-Appellant*,

*v.*

BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4794—**Rebecca R. Pallmeyer**, *Judge.*

————————

ARGUED FEBRUARY 20, 2008—DECIDED AUGUST 19, 2008

————————

Before EASTERBROOK, *Chief Judge,* and BAUER and WOOD,
*Circuit Judges.*

WOOD, *Circuit Judge.*  Plaintiff Geraldine King worked
as a ticket clerk for Defendant Burlington Northern &
Santa Fe Railway Company ("Burlington"). Following a
theft incident, Burlington filed a criminal complaint
against King and fired her. The criminal proceedings,
however, terminated in King's favor. After what she saw
as her vindication, she filed a civil suit against Burlington

for malicious prosecution. This time she was unsuccessful: the district court granted summary judgment in favor of Burlington. We find that King failed to satisfy her burden on summary judgment with respect to at least one element of her claim. Because she cannot establish the date when Burlington filed its criminal complaint, she is also unable to show that Burlington lacked probable cause as of the time of the filing of charges. For that reason, we affirm.

**I**

In March 2003, Sue Walker, the Chief Clerk for Burlington, noticed a discrepancy in the ticket inventory at the Aurora Station. One hundred 10-ride tickets were missing. After a thorough search, Burlington concluded that the tickets had been stolen, and on March 17 it launched an investigation, for which Special Agent Dale Lange was responsible. On March 26, Lange located a passenger whose ticket matched one of the missing numbers; the ticket showed that it had been issued on March 24. A hole-punch on the ticket revealed that it had first been used on a 5:25 a.m. train out of Aurora on that same day. Lange testified that the passenger identified King as the person who sold him the ticket. Four of the missing tickets were eventually tracked down after Burlington employees were told to be on the lookout for certain serial numbers. The first punch on each one occurred at times when only King was on duty selling tickets.

Lange filed a criminal complaint in the Circuit Court of Kane County, Illinois, accusing King of stealing the

missing tickets. The date of the filing is disputed: King asserts that it was on March 24, 2003 (and thus before the date when Lange found the first missing ticket), while Burlington says that Lange filed the complaint after the passenger holding the suspect ticket identified King. The district court observed that neither side submitted a date-stamped copy of the criminal complaint as an exhibit.

At the same time, Burlington commenced proceedings under the collective bargaining agreement ("CBA") it had with King's union, the Transportation Communications Union Local No. 781. It held an initial hearing on April 10, 2003, to determine what role, if any, King had in the alleged theft of the ticket that Lange had recovered on March 26. King was present and represented by the union. A second hearing took place on May 2, 2003, by which time two additional missing tickets had been recovered and linked to King. One of those tickets was stamped as sold on January 29, 2003, and the deposit slip for the check used in payment was written in King's handwriting. The other was sold on March 7, 2003, and once again the first punch was for a very early train (the 4:47 a.m.). King was working at the relevant times on both January 29, 2003, and March 7, 2003, but she reported no revenue that would have corresponded with the sale of the two tickets.

In light of the information presented at the hearings, Burlington fired King. She exhausted the administrative appeal process, which culminated in a review by the System Board of Adjustment, an arbitration panel convened pursuant to the Railway Labor Act ("RLA"), 45

U.S.C. § 151 *et seq.* The Board upheld King's discharge, finding that Burlington was

> able to establish a convincing case that [King] was the individual who sold and benefitted from the sale of the missing tickets. The circumstantial evidence is strong that she was the only person who could have done so. While a question about [King's] role might have been raised when one missing ticket appeared, the presence of additional missing tickets all connected to Ms. King make for a compelling case.

In the meantime, on November 16, 2004, Burlington's criminal complaint was dismissed because the complaining witness, Lange, did not present himself for the trial (even though he was in the courtroom that morning). The criminal case was thus terminated in King's favor, laying the groundwork for King's current suit for malicious prosecution.

Before any discovery took place, Burlington moved for summary judgment on the basis of collateral estoppel. It claimed that the System Board of Adjustment had already made a finding on the question whether Burlington had cause to believe that King stole the tickets, and that this finding precludes King from relitigating the issue of probable cause, a necessary element in her malicious prosecution claim. King objected, claiming that she needed discovery to adduce facts about the prior proceedings in order to demonstrate why the conditions necessary for collateral estoppel were not satisfied. She also wanted to depose Lange to support the merits of her claim for malicious prosecution. She hoped to show

that Burlington had acted in bad faith or with malice (another element of malicious prosecution), because its investigation focused solely on King.

The district court thought that the facts relevant to the issue of collateral estoppel were not really in dispute. It instructed King to submit Requests for Admission, and after that, the court indicated it would decide whether discovery was necessary. Eventually the court was satisfied that it could rule on the motion for summary judgment even taking as true King's contentions. It denied the request for discovery and granted summary judgment in favor of Burlington on grounds of issue preclusion. King filed this appeal, claiming that the district court abused its discretion in denying discovery and erred in holding that her claim was precluded by the arbitration proceedings.

## II

We review the district court's decision to deny King's Rule 56(f) motion for abuse of discretion, *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055-56 (7th Cir. 2000), and its decision to grant summary judgment *de novo*, *Sound of Music Co. v. 3M*, 477 F.3d 910, 914 (7th Cir. 2007). We may affirm a grant of summary judgment on any ground that finds support in the record. *Wallace v. Greer*, 821 F.2d 1274, 1277 (7th Cir. 1987). The district court's jurisdiction was based on diversity (King is a citizen of Illinois, and Burlington is a citizen of Texas and Delaware). The parties agree that the substantive law of Illinois applies here.

Illinois requires a plaintiff suing for malicious prosecution to show:

> (1) the commencement or continuance of a criminal or civil judicial proceeding by the defendant; (2) a termination of that proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding.

*Burghardt v. Remiyac*, 565 N.E.2d 1049, 1051 (1991) (emphasis removed). The parties to this suit contest only elements (3) and (4).

In its motion for summary judgment, Burlington argued that King cannot prevail on her claim for malicious prosecution because the SBA's finding—that Burlington had made a "convincing" and "compelling" case that King was guilty of theft—is more than sufficient to meet the lower "probable cause" threshold that would defeat King's civil claim. This finding, it continued, was entitled to preclusive effect in King's civil lawsuit.

We begin with the question of preclusion. The district court noted that the parties disputed which law (federal or state) governed the preclusive effect of the Board's ruling, but that the choice made no difference to the outcome here. The Supreme Court recently reviewed the requirements for issue preclusion in *Taylor v. Sturgell,* 128 S.Ct. 2161 (2008), where it noted that "[i]ssue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the

issue recurs in the context of a different claim." *Id.* at 2171 (quotation marks omitted). In *University of Tennessee v. Elliott,* 478 U.S. 788 (1986), the Supreme Court held in an analogous setting that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' *Utah Construction & Mining Co., supra,* 384 U.S., at 422, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799. We see no reason why the System Adjustment Board's findings would be entitled to any less deference than those of a state administrative agency. For present purposes, however, it is enough to assume for the sake of argument that the Board is the type of tribunal whose findings may receive preclusive effect, because there is a different problem that prevents us from relying on this theory.

As *Taylor* held, issue preclusion applies only when (among other things) the same issue is involved in the two proceedings and the determination of that question is "essential" to the prior judgment. Here, that requirement is not met. The Board waffled a bit in its finding: rather than saying out-and-out that King was a thief, it held only that Burlington had established a convincing case for that position. We cannot tell from the Board's decision whether the strength of evidence that it found "convincing" would be the same as the amount and quality of evidence needed to establish probable cause in a criminal prosecution. Burlington was not required to limit its own management discretion so severely that employee

misconduct had to qualify as criminal behavior (or even probable cause to find such behavior) before it could fire someone. In addition, the Board had nothing to say about *when* Burlington's probable cause fell into place and whether it was before Lange filed the criminal charges. Thus, even if we assume that the Board unambiguously found that Burlington had probable cause to believe that King had stolen the tickets, Burlington needs more before it is entitled to prevail.

Burlington did not, however, put all of its eggs in the "issue preclusion" basket before the district court. It also argued that King had not presented enough evidence on the merits to defeat summary judgment. It is here that the absence of evidence about the date when the criminal complaint against King was filed becomes important. King herself admitted in her reply brief in this court that "[t]he time of the filing of the charge is crucial to plaintiff's proof of lack of probable cause." She complains that she was never given the opportunity to investigate through dis-covery what information Lange had at the time of his filing of the criminal complaint, and that her attempt to ascertain the time of the filing through a Request for Admission was stymied by Burlington's response that it did not know the precise date.

King is correct insofar as she recognizes that the date on which the criminal complaint was filed is crucial to her case. Without some evidence that the date preceded Burlington's discovery of the incriminating evidence, King cannot establish that Burlington lacked probable cause to file charges against her for the theft. There is no

doubt that it had ample evidence to support probable cause for the criminal charges by the time it fired her.

The problem for King is that it was her burden—not Burlington's—to raise a material question of fact on each element of her malicious prosecution claim. Among other things, she had to establish by competent evidence the date of the filing of the criminal charges. This information could have been obtained without depositions or other discovery, as it is publicly available. And if for some reason King could not learn through normal channels when the case was filed, she could have explained the problem to the district court and asked for an opportunity to pursue alternate avenues. King, however, said nothing to the district court about any inability to fix the date of the charges. Instead, she argued that she needed discovery to help her show what really happened during the grievance procedure and why it lacked enough procedural safeguards to permit issue preclusion to apply.

We realize that, in addition to seeking to depose various Burlington officials about the adequacy of the grievance procedure, King informed the district court that she wanted to depose Lange to prove that "[Burlington] focused only on [King] . . . ." But this is a far cry from letting the court know that she wanted to ask Lange when he filed the complaint on Burlington's behalf. It also fails to alert the court to her interest in verifying that Burlington had probable cause as of that time it commenced the criminal proceeding. Indeed, King's oral remark about Burlington's singular focus was in response to the following question posed by the district court:

"What's the evidence—in her mind, what shows that they treated her with bad faith?" King replied that she wanted to prove bad faith by showing that Burlington ignored other possible suspects, and the court assured her that it was "prepared to assume that they focused only on her."

Bad faith or malice, for purposes of the fourth element of a malicious prosecution case in Illinois, is not the same thing as probable cause (or its absence), for purposes of the third element. Probable cause is an objective standard. If a police officer focuses on a suspect, for example by conducting surveillance on her and only her, and through that surveillance accumulates enough evidence to give rise to probable cause to arrest her, it would not matter whether he had done so out of ill will or the purest motives.

Thus, the district court did not abuse its discretion in denying King's request for a continuance to conduct discovery, because King failed to inform the court about the only factual dispute on which discovery might have made a difference to her claim, namely, the date of the filing of charges and what evidence was known to Burlington as of that date. Indeed, even had she let the court know that this was what she wanted to explore, the court might have denied her request on the theory that the case did not need to be delayed for the sake of publicly available information.

* * *

As the record stands, King has not submitted evidence that would allow a trier of fact to conclude that Burlington

lacked probable cause to file criminal charges against King. Therefore, we AFFIRM the judgment of the district court.