NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted November 30, 2011[*]
Decided December 23, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 11-2290 | Appeal from the United States District Court for the Southern District of Illinois. |
| RONALD D. SMART, *Plaintiff-Appellant,* | No. 07-CV-0094 DRH |
| *v.* | David R. Herndon, *Chief Judge.* |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 702, et al., *Defendants-Appellees.* | |

**ORDER**

Ronald Smart, a non-union electrician, alleges that an agent for Local 702 of the International Brotherhood of Electrical Workers coerced a businessman to renege on his

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

contract with Smart and hire a union member to finish the job. In a previous appeal we held that Smart's allegations state a claim that Local 702 engaged in a secondary boycott, an unfair labor practice for which redress is available to Smart under § 303 of the National Labor Relations Act, 29 U.S.C. § 187. *See Smart v. Local 702, Int'l Bhd of Elec.Workers*, 562 F.3d 798 (7th Cir. 2009). On remand the district court granted summary judgment for Local 702 on the ground that Smart lacks evidence that he was damaged by the union's tactic. We conclude that the court erred.

Smart is a sole proprietor doing business as Paschall Electric. He submitted a bid to do electrical work at a sports facility that was undergoing renovation. As reflected by Smart's written bid, most of the work involved running conduit and wire, installing outlets, and connecting lights and other fixtures. Smart's bid of $7,575 for labor and materials was accepted. He started working immediately, but on the second day he was fired and replaced by a union electrician whose $12,000 bid had been rejected when the operator of the facility accepted Smart's proposal. In an affidavit the operator explains that a representative of Local 702 had threatened to "shut down" his renovation project if he did not replace Smart with the electrician named by the union. The Local 702 representative warned that contractors in other building trade unions would stop other work necessary to open the sports facility on schedule, and because time was of the essence, the operator of the facility acceded to the union's demands. Smart was paid $900 after he submitted a bill for 12 hours of labor and $233 in materials already expended for the job.

Smart filed a complaint with the National Labor Relations Board, which was settled by Local 702 agreeing to post notice to its members that the union would not use pickets or threats to coerce the operator of the sports facility to stop doing business with Smart. After that Smart filed this lawsuit. Initially he raised a handful of claims against Local 702, its law firm, and one of the firm's attorneys. The district court dismissed that complaint on the ground that it failed to state a claim, and after we partially overturned that decision, Smart amended his complaint to plead only the § 303 claim arising from the alleged secondary boycott. (Smart again named as defendants the lawyer and firm, but the district court dismissed both after concluding that § 303 authorizes suit only against a labor organization. Smart has abandoned any challenge to this ruling.)

After the district court had declined Smart's request to reopen the period for discovery, Local 702 moved for summary judgment. The union conceded the existence of a material dispute concerning whether it had engaged in a secondary boycott. The union argued, however, that Smart lacked evidence he would have made a profit on the terminated contract and thus could not prove he suffered an injury. The union attached the transcript of Smart's deposition, during which counsel for Local 702 posed a series of questions about the likelihood that Smart would have made a "profit"—a term that counsel never defined—if his contract at the sports facility had not been terminated. In answering counsel's questions, Smart said he was uncertain whether that job would have been

profitable, that he may have bid the job at no profit just to stay busy, that he did not know what profit margin he usually built into his bids, and that he could not then recall any document that might refresh his memory. In opposing the union's motion for summary judgment, Smart explained that his deposition testimony had been hindered by not having access during the deposition to the documents from which he could determine his profit. Since that time, he said, he had reviewed his records and verified that he was charging the operator of the sports complex $55 per hour for labor but paying his one employee only $16.50 per hour, and that he already had many of the necessary materials left over from previous jobs, so he would have made money working at the sports facility. Smart attached to his response the invoice he submitted for the work completed before his contract was terminated, which confirms that he was charging $55 per hour for labor. He did not attach any document or affidavit supporting his assertions that his one employee was being paid only $16.50 per hour or that he already had on hand many of the necessary materials. But Smart remedied that omission by filing his own motion for summary judgment, which the district court evaluated along with the union's motion. This time Smart attached his employee's payroll record for the relevant time period, which states his employee's hourly rate as $16.50. While the motions for summary judgment were pending, the district court cancelled a settlement conference which had been scheduled.

The district court granted Local 702's motion and denied Smart's. The court reasoned that injury is an element of a § 303 claim arising from a secondary boycott and that Smart had failed to present competent evidence that he suffered lost profits because he was fired. According to the court, Smart had not provided evidentiary support for his assertions that his employee was paid only $16.50 per hour or that he already possessed some of the necessary materials for the job, but the court made no mention of the payroll record listing the $16.50 wage rate. What's more, the district court said, a determination of damages would be too speculative even with admissible evidence of the $16.50 rate and the reduced expense of using materials on hand.

Smart presents four arguments on appeal; one entitles him to relief but the others do not.

First, he contends that the record contains sufficient evidence demonstrating a nonspeculative injury from the termination of his contract and thus the district court erred by granting summary judgment to Local 702. Our review is de novo. *See King v. Burlington N. & Santa Fe Ry.*, 538 F.3d 814, 817 (7th Cir. 2008).

A plaintiff must present sufficient evidence to establish a genuine dispute of fact on all essential elements of a claim in order to survive summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). If a plaintiff's business was injured by a secondary boycott, a suit may be brought under § 303 to recover for the loss sustained. 29 U.S.C. § 187(b); *Landgrebe Motor Transp., Inc. v. District 72, Int'l Ass'n of Machinists &*

*Aerospace Workers*, 763 F.2d 241, 244 (7th Cir. 1985). A § 303 action arising from a secondary boycott is similar to a claim for tortious interference with a contract. *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 666 (U.S. 1954); *Taylor Milk Co. v. Int'l Bhd. of Teamsters*, 248 F.3d 239, 247 (3d Cir. 2001); *Allied Int'l v. International Longshoremen's Ass'n*, 814 F.2d 32, 40 (1st Cir. 1987). In order to recover, Smart must be able to prove injury. *See R.L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 660 (7th Cir. 1999); *George E. Hoffman & Sons, Inc. v. International Brotherhood of Teamsters*, 617 F.2d 1234, 1247 (7th Cir. 1980). But he does not need to detail the exact amount of the damages he suffered. *R.L. Coolsaet Constr. Co.*, 177 F.3d at 660; *BE & K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 770 (7th Cir. 1998).

The district court erred by granting summary judgment for Local 702. In concluding that Smart lacked evidentiary support for his assertion that his labor costs were just $16.50 per hour, the court overlooked the payroll record Smart attached to his cross-motion for summary judgment. The district court evaluated Local 702's and Smart's motions for summary judgment simultaneously and was obligated to consider the materials Smart attached to his motion. *See Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011) (stating that summary judgment is appropriate only when evidence "as a whole" shows there is no genuine dispute as to any material fact); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (stating that court must consider each party's evidence submitted with cross-motions for summary judgment regardless which motion evidence is attached to). Although the court had discretion to disregard this document, *see* S.D. ILL. LOCAL R. 7.1(d) and FED. R. CIV. P. 56(c)(3), the court did not, as far as we can tell, exclude the billing record on a procedural ground.

Local 702, for its part, continues to ignore the existence of this payroll record, but once that record is taken into account, it is clear that Smart introduced evidence that he suffered an injury. Smart was injured if the amount of money he would have earned from the job surpasses what his costs would have been. *See, e.g., E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 647–648 (7th Cir. 2011) (explaining that damages for claim of tortious interference with contract should be measured by difference between lost revenue and avoided costs); RESTATEMENT (SECOND) OF TORTS § 912 cmt. d, illus. 9 (1979) (explaining that party is entitled to recover under claim for tortious interference with business transaction if able to prove that revenues would have been greater than expenses).

Smart proposed to complete the job for $7,575, a price that included labor and materials. We do not know exactly what all of the costs of the job would have been, but the evidence gives us some idea. Smart's labor costs were less than 1/3 the rate he charged the customer—he charged $55 per hour for labor for his first week of work, but paid his employee $16.50 per hour. Also, Smart's material costs were low: Smart's proposal describes a job which appears labor intensive (implying that a large portion of the bid was for labor

rather than material costs), and his invoice for the work he completed shows that materials accounted for only slightly more than 1/4 of the charges. Low material costs, and low hourly labor costs relative to hourly charges, make it likely Smart would have earned more from the job than he spent to complete the job. Certainly it is possible that Smart would have incurred additional expenses attributable solely to his lost job at the sports facility (e.g., the cost to rent a lift or Smart's share of payroll taxes for his employee if the employee was paid only for actual hours worked). But Local 702 has never argued—and did not submit any evidence—that Smart would have incurred additional out-of-pocket costs but for the union's interference. Indeed, since the job was completed by an electrician of the union's choosing, we can infer that Local 702 has ready access to records of the labor hours expended and the non-labor expenses associated with completing the work started by Smart, so the union would know whether Smart would have earned something from his contract even without charging union scale.

Furthermore, Local 702 misunderstands Smart's deposition testimony. Smart's answers to the questions posed by the union's lawyer show that he was considering "profits" in the sense of money he would make beyond *all* of his costs, including those he would have incurred whether he completed the job or not (e.g., he specifically referenced the rent he paid). But the costs Smart would have incurred whether he was idle or working on the job at the sports complex should not be subtracted from his anticipated revenue in making the determination as to whether he was injured. *See Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983). Simply because a business has not been deprived of a "profit" in the accounting sense does not mean it was not injured. Overhead costs that Smart would have defrayed with revenue from his job at the sports complex had to be paid from other work due to the union's interference.

There is evidence that Smart suffered an injury, and thus Local 702 was not entitled to summary judgment on the ground asserted. No alternative basis to support a grant of summary judgment for Local 702 was argued in the district court, and none is asserted here, and so another remand is in order.

Smart's second argument on appeal is that the district court erred by not granting his cross-motion for summary judgment. Like Local 702, Smart discussed in his motion only the element of injury. His motion is best understood as a further opposition to Local 702's submission, and since Smart did not discuss the other elements of his § 303 claim, he could not have been entitled to judgment as a matter of law. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Moreover, even if loss is the only element in dispute, Smart's evidence would prove an injury but not the extent of that injury. *See BCS Servs. v. Heartwood 88, LLC*, 637 F.3d 750, 758–761 (7th Cir. 2011) (reversing dismissal at summary judgment and remanding for trial on question of damages where plaintiffs' evidence established that defendants' actions were proximate cause of injury); *Ruzicka Elec. & Sons, Inc. v. IBEW, Local 1*, 427 F.3d 511, 521–522 (8th Cir. 2005) (concluding that plaintiff had presented sufficient

evidence of damages resulting from secondary boycott so that judgment as matter of law was not appropriate, and that jury should determine extent of damages on remand)*; see also Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995) (explaining that for claims sounding in tort, fact of injury and amount of injury are analytically distinct); *Ustrak v. Fairman*, 781 F.2d 573, 578 (7th Cir. 1986) (explaining that for claims sounding in tort, in order to recover more than nominal damages, plaintiff must establish both fact and extent of injury).

Smart's third argument on appeal is that the district court abused its discretion by choosing not to reopen discovery. A decision to disallow additional discovery is reviewed for abuse of discretion. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003). In this case, Smart did not show good cause for failing to complete discovery within the seven months allotted by the district court, nor did he suggest what additional evidence he hoped to unearth if given more time. Neither did Smart establish that he lacked means to compel Local 702 to answer his discovery requests. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 886 (7th Cir. 2005) (concluding that district court did not abuse its discretion in denying additional discovery where plaintiff had failed to explain why ample time plaintiff already had to conduct discovery and demand compliance with unmet requests was insufficient); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056–1058 (7th Cir. 2000) (same). The court did not abuse its discretion.

Smart's last argument is that the district court abused its discretion by cancelling the settlement conference. District courts have discretion to schedule and, by implication, to cancel settlement conferences, and we cannot say that the district court acted unreasonably by canceling the conference while motions for summary judgment were pending. *See* FED. R. CIV. P. 16(a)(5), (c)(2)(I); S.D. ILL. LOCAL R. 16.3(b)(1); *Goss Graphics Sys. v. Dev Indus.*, 267 F.3d 624, 627 (7th Cir. 2001) (stating that district court has authority to order parties to engage in settlement conference); *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989) (same). But now that the lawsuit is bound for trial on remand, the district court may want to reconsider the scheduling of a settlement conference.

The order granting summary judgment for Local 702 is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this order.