In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2568

CANDIS M. FLINT,

*Plaintiff-Appellant,*

*v.*

CITY OF BELVIDERE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 C 50255 — **Frederick J. Kapala**, *Judge.*

ARGUED APRIL 21, 2015 — DECIDED JUNE 30, 2015

Before EASTERBROOK and RIPPLE, *Circuit Judges*, and
REAGAN, *Chief District Court Judge.*\*

REAGAN, *Chief District Judge*. In 2009, unknown assailants
(or perhaps just one) shot and killed Marty Flint, who had
sporadically provided intelligence to narcotics officers in the
City of Belvidere, Illinois, since 2006. Marty's mother, Candis

---

\* Of the Southern District of Illinois, sitting by designation.

Flint ("Flint" for the purposes of this appeal—we will refer to Marty by first name where necessary), sued the City, the police chief, a sergeant, and Belvidere officers David Dammon and Leon Berry (collectively, "Defendants"). Flint originally brought both state tort claims and § 1983 claims alleging Defendants violated Marty's substantive due process rights under the Fourteenth Amendment. The constitutional claims boil down to allegations that Marty was targeted and killed in retribution for his actions as a police informant, and that Defendants are liable for failing to protect him.

The state claims fell to a statute of limitations argument, and Defendants moved for summary judgment on the § 1983 claims against Defendants Dammon and Berry (two officers who were Marty's primary contacts in the police department). It is undisputed that, absent a constitutional violation by Dammon and/or Berry, the other Defendants—municipal bodies and supervisors—are not subject to § 1983 liability. *See Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) (individual officers must be liable on underlying substantive claim for municipal liability to attach under either failure to train or failure to implement theory); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 779 n. 14 (7th Cir. 2014) (no respondeat superior liability under § 1983).

The day Defendants moved for summary judgment—and about a month after discovery closed—Flint moved both to reopen discovery and for the appointment of a special prosecutor to investigate allegations that Dammon and Berry lied throughout discovery. The magistrate judge denied both motions. Flint failed to appeal the magistrate's decision to the district judge, but did manage to respond to Defendants' summary judgment motion.

Unfortunately for Flint, her response did not comport with Northern District of Illinois Local Rule 56.1, which guides how parties must marshal evidence at the summary judgment stage. Applying that rule, the district court deemed admitted most of Defendants' factual assertions, ignored additional facts raised in Flint's response briefing, and granted summary judgment against her.

Flint now appeals both the magistrate's discovery rulings and the district court's grant of summary judgment. We affirm. The magistrate acted within his discretion to deny Flint's tardy motions (issues Flint has forfeited anyhow), and Flint's procedural gaffe in not following Local Rule 56.1 left an evidentiary record insufficient to survive summary judgment.

## I. Background

Flint's failure to follow the local rules circumscribes our review of the facts. In the Northern District of Illinois, Local Rule 56.1 controls the presentation of evidence at the summary judgment stage. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). In opposition to a movant's statement of material facts (itself organized into "short numbered paragraphs" and including specific cites to the record, N.D. Ill. L.R. 56.1(a)(3)), the non-movant must file a concise response containing (A) correspondingly numbered paragraphs summarizing the movant's position, (B) responses to each paragraph containing "specific references to the affidavits, parts of the record, and other supporting materials relied upon," and (C) a statement of any additional facts that require denial of summary judgment. N.D. Ill. L.R. 56.1(b)(3)(A)–(C).

This Court has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1. *Petty*, 754 F.3d at 420; *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 654–55 (7th Cir. 2011); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). The district court exercised that discretion here, deeming admitted forty-two of the forty-seven enumerated paragraphs in Defendants' Rule 56.1(a) statement. Further, since Flint failed to provide a separate statement of facts, the district court declined to consider additional facts raised in her response brief.

Flint challenges neither the district court's decision to apply Local Rule 56.1 nor its synopsis of the facts she managed to properly present. Rather, she posits that the facts that survived the Rule 56.1 purge should have sufficed to stave off summary judgment. The typical incantation—that at summary judgment *all* facts are construed and *all* inferences drawn in the light most favorable to the non-movant, *Rosenbaum v. White*, 692 F.3d 593, 599 (7th Cir. 2012)—must therefore be applied in light of Flint's procedural failings. Here we consider, still in the light most favorable to Flint, *only* the facts (and inferences drawn from them) presented in accordance with Local Rule 56.1.

So the material facts this Court can consider are these, and these alone. Marty Flint, who had been affiliated with the Gangster Disciples street gang, was known by Belvidere police to have been involved in various gang and drug activity. In April 2006, acting on intelligence from two informants, Defendants Dammon and Berry (both narcotics officers in the Belvidere Police Department) arrested Marty and his

wife Sarah. The state charged Marty with felony possession of cannabis with intent to deliver.

Marty, his wife, and his mother signed agreements to become cooperating witnesses in an effort to reduce Marty's charges. (It appears Marty's mother cooperated simply to assist her son and daughter-in-law. The record does not indicate she was ever a criminal defendant.) By protocol, each cooperating witness is informed he or she may have to participate in drug buys, wear a wire, provide witness statements, and possibly be called to testify. In fulfilling their part of the agreement, the Flints phoned various drug dealers, arranged controlled buys, and wore wires during those buys. Recordings from the wires were transcribed, turned over to the state's attorney, and produced in discovery to the drug dealers' attorneys, who presumably shared the Flints' identities with their clients. In 2006 and 2007, Marty helped officers gather evidence regarding several individuals and, soon after, Marty and his wife were threatened by someone named Rosendo Moreira. Defendants arrested Moreira, who was charged with harassing a witness, unlawful communication with a witness, and reckless conduct.

In 2009, Marty was arrested again. He was fully aware his name had been disclosed as an informant to criminal defendants regarding the earlier cases. He was now a known "snitch," and did not want to spend time in prison. So he approached Defendant Dammon and signed another cooperating agreement to gather evidence for the Belvidere Police. Marty completed his last controlled buy in August 2009.

In November 2009, while sitting inside his parked vehicle in Rockford, Illinois, Marty Flint was shot and killed. Neither Rockford police nor Defendants have any knowledge of who

shot Marty, or why. Rockford police have declared the murder a "cold case."

## II. Discussion

Flint challenges both the district court's summary judgment ruling and the magistrate's decision not to reopen discovery or appoint a special prosecutor. So that there is no concern that more (or different) evidence should have informed the summary judgment calculus, we turn first to the magistrate judge's denial of Flint's discovery motions.

### A. Magistrate's Rulings

A month after discovery closed, Flint—alleging that Dammon and Berry lied throughout discovery—moved for an extension of the discovery deadline and the appointment of a special prosecutor to investigate those allegations. The magistrate judge did not err in denying the motions.

A decision to deny reopening discovery is reviewed for abuse of discretion. *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 743 (7th Cir. 2007). That discretion is considerable: case management depends on enforceable deadlines, and discovery "must have an end point." *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011). *See also Lock Realty Corp. IX v. U.S Health, LP*, 707 F.3d 764, 772 (7th Cir. 2013). In managing their caseloads, district courts are entitled to—"indeed they must—enforce deadlines." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) (internal citation and quotation marks omitted).

Only if a party has failed to act "because of excusable neglect" do the Federal Rules permit a post-deadline extension. Fed. R. Civ. P. 6(b)(1)(B); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 463–64 (7th Cir. 2005). The reasons for the delay—including whether it was within the reasonable control

of the movant—must be considered. *Raymond*, 442 F.3d at 606 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993)). Neglect is generally not excusable when a party should have acted before the deadline, *see Murphy v. Eddie Murphy Prods., Inc.*, 611 F.3d 322, 324 (7th Cir. 2010), or when a party's lack of diligence is to blame for its failure to secure discoverable information, *see Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002).

Here, Flint claims Defendants Dammon and Berry engaged in discovery gamesmanship but cedes she knew they would resort to those dilatory tactics (including lying) as early as the filing of their Rule 26(a) disclosures. Those disclosures were due in May 2012, and Flint did not docket her tardy motion—premised entirely on Defendants' malfeasance—until April 2013. Waiting almost a year to request extra time in the face of an opponent's sandbagging is certainly neglect, but not of the excusable variety. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("When parties wait until the last minute to comply with a deadline, they are playing with fire.").

As to the magistrate's refusal to appoint a special prosecutor to investigate Dammon and Berry, Flint's motion was premised on a grave misunderstanding of the scope of judicial authority. To maintain the separation of powers, judges are generally forbidden from undertaking tasks more properly accomplished by the executive branch. *United States v. Courtland*, 642 F.3d 545, 549–50 (7th Cir. 2011) (quoting *Morrison v. Olson*, 487 U.S. 654, 680–81 (1988)). And "[g]overnmental and prosecution of crimes is a quintessentially executive function." *Morrison*, 487 U.S. at 706. *See Watts*

*v. Indiana*, 338 U.S. 49, 54 (1949) ("Ours is the accusatorial as opposed to the inquisitorial system.").

In the rare case where a federal court initiates criminal contempt proceedings to vindicate its authority, that court "request[s]" the U.S. Attorney to prosecute the charge. *United States v. Providence Journal Co.*, 485 U.S. 693, 697 n. 3 (1988) (citing *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)). If the U.S. Attorney declines (whether due to a conflict of interest or obstructionist behavior), the Supreme Court has instructed district courts to "appoint" a disinterested private attorney as special prosecutor. *Id.*; *Young*, 481 U.S. at 800–01. But this is not a contempt case, so neither requesting U.S. Attorney involvement nor appointing a special prosecutor was in play. Insofar as she sought a court-appointed prosecutor, Flint's motion was a non-starter.

In any event, a thorough review of the record reveals Flint never raised the magistrate judge's rulings with the district judge, though she had ample time to do so: Flint's fourteen-day period to object, *see* Fed. R. Civ. P. 72(a), expired well before her summary judgment response came due (twenty-six days later). Subject to exceptions inapplicable here, failure to challenge a magistrate's pretrial ruling in the district court forfeits the right to attack it on appeal. *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003); *United States v. Brown*, 79 F.3d 1499, 1504–05 (7th Cir. 1996). Whether via that forfeiture or on the merits, Flint's appeal fails insofar as she targets the magistrate's rulings on extending discovery and appointing a special prosecutor.

### B. District Court's Summary Judgment Ruling

The district court granted summary judgment in favor of Defendants on Flint's claim that Officers Dammon and Berry failed to protect Marty, an informant susceptible to victimization due to his cooperation with police. We review a grant of summary judgment *de novo*. *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). Summary judgment is appropriate only if there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012). Metaphysical doubt as to the material facts is not enough to overcome summary judgment, *Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012), and a party may not rest upon the mere allegations of his pleading, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be affirmed on any ground that finds support in the record. *King v. Burlington N. & Santa Fe Ry. Co.*, 538 F.3d 814, 817 (7th Cir. 2008).

The Due Process Clause protects "people from the State" rather than ensuring "that the State protect[s] them from each other." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). Accordingly, the Fourteenth Amendment imposes no general duty on the state to protect individuals from harm by private actors. *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011).

Flint seeks relief here under an exception to *DeShaney*'s rule of no-duty: the "state-created danger doctrine." *See id.*; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 766 (7th Cir. 2014). The exception is a narrow one. *Doe*, 782 F.3d at 916. Establishing a claim requires showing (1) defendants, by their af-

firmative acts, created or increased a danger to the plaintiff; (2) defendants' failure to protect the plaintiff from that danger proximately caused plaintiff's injuries; and (3) defendants' failure to protect the plaintiff "shocks the conscience." *Jackson*, 653 F.3d at 654 (citing *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–18 (7th Cir. 2007)); *McDowell*, 763 F.3d at 766. Though recent cases only include *proximate* cause (which hinges on foreseeability) as an element, *see King*, 496 F.3d at 818; *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828–29 (7th Cir. 2009), it is well-established that recovering damages for a constitutional tort also requires causation in fact—"i.e., that the defendant caused the claimed injury," *Beard v. O'Neal*, 728 F.2d 894, 898–99 (7th Cir. 1984).

The "shocks the conscience" prong is an attempt to quantify the rare "most egregious official conduct" required for substantive due process liability. *Jackson*, 653 F.3d at 654–55 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Though the standard lacks precise measurement, only conduct falling "towards the more culpable end of the tort law spectrum of liability" is constitutionally conscience-shocking. *Id.* at 655. The language has drawn criticism as adding needless complexity to an otherwise straightforward liability analysis, *see Slade v. Bd. of Sch. Dirs. of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012), but suffice it to say: governmental defendants must act with a *mens rea* akin to criminal recklessness for constitutional liability to attach, *id.*; *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). *See also McDowell*, 763 F.3d at 766 (deliberate indifference "may be sufficient … depending on the circumstances"); *Jackson*, 653 F.3d at 655 ("deliberate indifference"); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998) ("at least as demanding" as de-

liberate indifference); *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc) (criminal recklessness). Neither bad decision-making nor grossly negligent behavior meets the stringent test. *Slade*, 702 F.3d at 1032; *Jackson*, 653 F.3d at 655 (citing *Lewis*, 523 U.S. at 846).

On the record before us, no jury could find causation in fact. Flint's claim depends on several steps: Marty gave intelligence to Defendants; Defendants (acting with a certain level of culpability) revealed Marty's informant status to certain persons; and lastly, somebody killed Marty because of it. But the evidence supports only the first link in that chain, plus the disclosure (detail-free, as far as Defendants' role is concerned) of Marty's informant status sometime before he re-upped with the Belvidere P.D. in 2009. Even inferring Marty was killed by someone who knew he was informant—and there is no evidence to that effect—any theory linking the murder to Defendants' disclosure of Marty's informant status would depend on speculation and conjecture to fill the evidentiary void. Such theories cannot survive summary judgment. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

We do not mean to suggest that an informant's murder must be solved for due process liability to attach. That is the only relevant lesson gleaned from *Hickerson v. Koepp*, an unpublished Sixth Circuit opinion from 1997 on which Flint hangs her hat.[1] There, a prison guard changed channels from

---

[1] While federal appellate courts may not forbid citation to their written dispositions issued on or after January 1, 2007, the rules leave open the possibility of prohibiting citations to unpublished decisions from before that date. Fed. R. App. P. 32.1(a). By circuit rule, citation to a pre-2007 unpublished order from this circuit would be wholly improper. 7th

a TV movie and, when inmates became angry at the change, blamed inmate Hickerson. *Hickerson*, 107 F.3d 11, 1997 WL 56961, at *1–2 (6th Cir. Feb. 10, 1997). Hickerson suffered a week's worth of constant threats, and then was beaten by an unknown assailant. *Id.* at *2. The assailant's anonymity could not preclude a finding of causation where the assault happened only seven days after the TV incident, Hickerson had no immediate history of trouble with other inmates, and Hickerson "was so afraid of being injured he made an oral request for a transfer." *Id.* at *3. In other words, there was ample evidence in *Hickerson* that the TV incident was "the only reasonable explanation for the beating." *Id.* at *4.

Except for the unknown identity of Marty Flint's killer, the instant case is distinguishable in every way. Where Hickerson (the week he was assaulted) requested a transfer away from danger, Marty renewed his relationship with the Belvidere P.D. even though he knew his name had (years before) been revealed to criminal defendants. The number of potential assailants in *Hickerson* was limited to the plaintiff's fellow inmates, and stands in stark contrast to the universe of possible perpetrators of Marty's murder. Perhaps most importantly, the Sixth Circuit affirmed that the *Hickerson* prison guard acted with deliberate indifference. Here there is no evidence of Defendants' culpability.

When confronted with Defendants' denial of culpability, Flint responded with no evidence of her own (at least, none that survived the application of Local Rule 56.1) to show De-

---

Cir. R. 32.1(b), (d). The Sixth Circuit has taken a different tack, broadly permitting citation "of any unpublished opinion, order, judgment, or other written disposition." 6th Cir. R. 32.1(a). Flint's invocation of *Hickerson* is unpersuasive, but it is permissible.

fendants acted in a conscience-shocking manner. The government frequently encourages people to expose themselves to danger, "for example by asking [them] to participate in a drug sting as a confidential informant." *Slade*, 702 F.3d at 1031 (citing *Dykema v. Skoumal*, 261 F.3d 701, 705–07 (7th Cir. 2001)). That the danger materializes does not, without some evidence about a defendant's culpability, create liability under the due process clause. *Id.* At best, Flint's case boils down to speculation—absent any evidence regarding Defendants' actions, motives, or mental state—that the danger of being an informant materialized. *See Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ("When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own.")).

Bereft of evidence regarding Defendant's culpability, or of why Marty was killed, Flint is left only with a *post hoc, ergo propter hoc* argument: Marty was an informant, then he was killed, therefore he was killed because he was an informant. As this Court has repeated time and again, that logical fallacy is not a good way to prove causation. *See Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 314 (7th Cir. 2011); *Musabelliu v. Gonzales*, 442 F.3d 991, 994 (7th Cir. 2006); *Trnka v. Local Union No. 688*, 30 F.3d 60, 63 (7th Cir. 1994). It is even less convincing when offered to show Defendants had the state of mind required for constitutional liability to attach. The district court correctly granted summary judgment.

### III. Conclusion

For the reasons stated above, we AFFIRM both the magistrate judge's order declining to re-open discovery or ap-

point a special prosecutor, and the district court's grant of summary judgment.