KELLY, Circuit Judge,
concurring.
Unlike the “special relationship” exception, the “state-created-danger” exception is not extensively discussed in DeShaney v. Winnebago Cty. Dep’t of Soc. Servs., 489 U.S. 189, 197-99, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), but rather is circuit developed. While the elements of this judicially-created theory vary somewhat among the courts, in order to state a claim based on “state-created-danger,” most require a plaintiff to articulate something like “a limited, precisely definable group” at risk. Fields v. Abbott, 652 F.3d 886, 891 (8th Cir.2011) (quoting Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir.2005)); see also, e.g., Ray v. Owens, 622 Fed.Appx. 97, 99 (3d Cir.2015) (unpublished per curiam) (holding that harm must be “foreseeable and fairly direct” and there must be “a special relationship between the [victim] and the state”); Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 864-66 (5th Cir. *307 2012) (en banc) (explaining that the Fifth Circuit has not adopted the theory, but has stated the “theory is inapposite without a known victim” (citation omitted)); Guy v. Lexington-Fayette Urban Cty. Gov’t, 624 Fed.Appx. 922, 933 (6th Cir.2015) (unpublished) (state-created danger requires special danger that affeets “a few potential victims, not a few hundred.”); John v. Farnsworth, 617 Fed.Appx. 453, 462-63 (6th Cir.2015) (unpublished) (state’s actions must place plaintiff specifically at risk, as distinguished from risk that affects public at large); Wood v. Ostrander, 879 F.2d 583, 590 (9th Cir.1989) (plaintiff distinguished from the general public); Currier v. Doran, 242 F.3d 905, 918 (10th Cir.2001) (plaintiff must be a member of a limited and specifically definable group). See also Flint v. City of Belvidere, 791 F.3d 764, 770-71 (7th Cir.2015) (no mention of public or group); Slade v. Bd. of Sch. Dirs. of City of Milwaukee, 702 F.3d 1027, 1033 (7th Gir.2012) (questioning usefulness of Tenth Circuit’s test, including “limited and specifically definable group” requirement).
I recognize that membership in the general public does not suffice to establish a limited, precisely definable- group. See Davis v. Fulton Cty., 90 F.3d 1346, 1351 (8th Cir.1996). Because Kruger has failed to plead anything more than a.statement that the general public was at, risk — Jenkins threatened to kill “people,” “others,” and “Christians, Jews, women and children” and “eat people, specifically Christians and Catholics” — I must concur in the opinion here as to Kruger’s § 1983 claims. Yet I harbor some doubt as to the logic of our state-created-danger theory as it currently stands in the face of highly unusual circumstances such as are presented by this case. I would accept an invitation to revisit the elements required to support the theory because of the minuscule likelihood, under current law, that any plaintiff could ever succeed in proceeding beyond a Rule 12(b)(6) motion without an identifiable before-the-faet, named victim or a specific place to be targeted. Where the line should be drawn in determining when a group is “precisely definable” enough to establish liability is a question worth examining. Should pleading danger to “anyone Jenkins comes into contact with” suffice to establish a precisely defined group? Should “any child Jenkins encounters”? Or must it always be as specific as an “ex-wife” or “John Smith”?
The lack of a consistent or decisive answer to those questions that makes sense in every factual scenario makes it troubling to dismiss this type of case at such an early stage. This is especially so here: If you consider the possibility that the other elements- of the “state-created-danger” theory are met, the duty of the State would likely be the same whether there was a named victim or not — to civilly commit Nikko Jenkins. Therefore, I question, under circumstances such as these, whether the simple public-versus-precisely-definable-group dichotomy is a useful one,, and I would not find it inconsistent with DeSha-ney to rethink- or refine it. ■ Nor would such refinement necessarily be foreclosed by Martinez v. State of Cal., 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (Defendant was “not aware that [the] decedent, as distinguished from the public at large, faced-any special danger.”). Moreover, the changes the court could reasonably consider would not open the floodgates to liability and litigation, for each of the other elements for establishing the “state-created-danger” theory in support of a § 1983 claim is a near-impossibly high hurdle, and all must be met. For instance, Kruger also needed to pléad that the defendants’ “conduct put her at a significant risk of serious, immediate, and proximate harm,” and courts analyze with great scrutiny whether state actors’ conduct consti *308 tutes action or inaction. Fields, 652 F.3d at 891 (quoting Hart, 432 F.3d at 805); see also, e.g., Rivera v. Rhode Island, 402 F.3d 27, 36 (1st Cir.2005); Doe v. Rosa, 795 F.3d 429, 440 (4th Cir.2015). The risk must also be, obvious or known to the defendants, and there must be a reckless, conscious disregard of. that risk. Finally, the defendants’ conduct must shock the conscience — yet another extremely high standard to meet. See, e.g., Flint, 791 F.3d at 770 (“Though the standard lacks precise measurement, only conduct falling towards the more culpable end of the tort law spectrum of liability is constitutionally conscience-shocking ... neither bad decision-making nor grossly negligent behavior meets the stringent test.” (internal quotation marks and quotation omitted)).
■Establishing a constitutional violation in this setting may be more difficult than bringing a claim based on state tort law that the state could very well expand, and understandably and justifiably so. See De-Shaney, 489 U.S. at 203, 109 S.Ct. 998 (noting that the State may change tort law if the people wish to expand liability); Rivera, 402 F.3d at 35-36 (“[Cjourts must be careful to distinguish between conventional torts and constitutional violations.” (quoting Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir.1997))). Yet the merits-of these few and far between claims are worth considering, and not dismissing out of hand. While tragic circumstances themselves must not dictate judicial outcomes adverse to the law, it is precisely the unusual fact pattern that can challenge the wisdom of reflexively rejecting a claim that does not quite fit into the current legal mold. This may be such a case, and one in which we have the opportunity to reevaluate, within the bounds of Supreme Court precedent, the efficacy of that current mold.